IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TOMCO METAL FABRICATING, INC., | ) ) ) | Case No. 1:21-cv-2248 |
| Plaintiff, | ) ) | MAGISTRATE JUDGE THOMAS M. PARKER |
| v. | ) ) | |
| TURNER CONSTRUCTION COMPANY, INC., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | | |

This matter concerns a dispute between plaintiff Tomco Metal Fabricating, Inc. ("Tomco") and defendant Turner Construction Company, Inc. ("Turner") over money Tomco contends it is owed for its work as a subcontractor on a project for the Smithsonian Institution ("Smithsonian"). The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 7. Turner moves for judgment on the pleadings, largely on the basis that Tomco's claims are barred by the release provision of a settlement agreement the parties entered into in 2014. Because the court finds that the release is enforceable and that the well-pleaded facts, as currently alleged, are insufficient to overcome enforcement of the release, Turner's motion is GRANTED and Tomco's complaint is DISMISSED WITHOUT PREJUDICE.

I.      **Factual Background**[1]

In 2007, the Smithsonian hired Turner as the general contractor for a construction project at the Smithsonian National Museum of American History.  ECF Doc. 1-2 at 6.  The project included a display for the Star-Spangled Banner that flew over Fort McHenry during the War of 1812.  *Id.*  On May 24, 2007, Turner subcontracted the construction of the display to Tomco, for which Tomco was to be paid $1,290,000.  *Id.*  The 2007 contract also provided for additional work, known as "change orders" in the construction industry.  *Id.*  Tomco performed work on 26 change orders worth over $700,000.  *Id.*

In 2009, Steve Kwik and Bill Wright (Turner's agents) informed Tomco that Turner intended to sue the Smithsonian for "additional monies" and needed Tomco to change its "paperwork" to assist with the case.  *Id.*  Kwik and Wright also told Tomco that Tomco needed to change "all of its paperwork for its change orders and other paperwork if Tomco wanted to get paid in the future so as to shift blame to The Smithsonian Institute instead of [Turner] for [Turner's] changes."  *Id.*

In 2014, Tomco signed a settlement agreement with Turner in exchange for $90,000.  ECF Doc. 1-2 at 7-8.  Tomco only signed the settlement agreement based on statements by Turner that:

1    Turner would pay Tomco "additional monies in the future when the case against the Smithsonian was resolved."

2.   "Tomco could submit quotes for $10,000,000 of additional work annually in the 2014 agreement."

---

[1] The facts in this section are drawn from Tomco's complaint, which we assume as true and view in the light most favorable to Tomco.  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

ECF Doc. 1-2 at 7.  Tomco relied on Turner's representations, as well as "other representations," because they had done business with one another for decades and Turner was one of the few companies in the United States qualified to bid on Tomco's type of work.  ECF Doc. 1-2 at 7, 9.

Unbeknownst to Tomco when it signed the 2014 agreement, Turner's representations were false and made only to induce Tomco to "change its paperwork," accept less money than was owed, and prevent Tomco from interfering in Turner's scheme.  ECF Doc. 1-2 at 7. Turner's alleged scheme was to "conceal the truth from The Smithsonian so it could make a claim for substantially more money under [Turner's] contract with The Smithsonian by shifting blame to The Smithsonian for the increased work due to change orders."  *Id.*  Tomco used its leverage as one of the largest general contractors in the United States "to take advantage of Tomco, a small local company that was placed in a precarious financial position."  *Id.*

In May 2017, Turner recovered $7,000,000 from the Smithsonian after a favorable decision from the U.S. Civilian Board of Contract Appeals.  ECF Doc. 1-2 at 8.  Turner did not, however, inform Tomco of this event.  *Id.*  Tomco learned of the decision for the first time in 2019, after which it approached Turner about their prior arrangement.  *Id.*  Turner refused to pay Tomco any amount or allow Tomco to submit quotes.  *Id.*  As a result of Turner's conduct, Tomco ceased operations.  *Id.*

## II.    Procedural History

On October 20, 2021, Tomco filed a complaint against Turner in the Cuyahoga County Court of Common pleas, asserting claims for breach of contract (Count One), unjust enrichment (Count Two), declaratory judgment (Count Three), and intentional misrepresentation (Count Four).  ECF Doc. 1 at 1; ECF Doc. 1-2 at 5-10.  Tomco also alleged that the 2014 contract "may not be valid or enforceable, due to it being a 'settlement agreement' and The Smithsonian not

being involved in it, not knowing Tomco was owed substantial money by its general contractor

… and while [Turner] was still making claims against the Smithsonian for unpaid work." ECF

Doc. 1-2 at 8.

On November 29, 2021, Turner removed the action to the this court on a claim of

diversity jurisdiction (Turner is a New York corporation and Tomco is an Ohio corporation).

ECF Doc. 1.  On December 31, 2021, Turner filed its answer, to which it attached three

contracts:

1. An unexecuted contract between Turner and Tomco dated May 24, 2007.

2. A "Mutual General Release and Settlement Agreement" between Tomco and Turner
   dated June 24, 2009 and signed by Tomco's president, Louis Tombazzi.

3. A "Settlement Agreement and Release" between Tomco and Turner dated July 2,
   2014 and signed by Tomco's co-president, Frank Tombazzi.

ECF Doc. 10; ECF Doc. 10-1; ECF Doc. 10-2; ECF Doc. 10-3.

The terms of the unexecuted 2007 contract stated that it was a contract between Tomco

and Turner for work on a project for the Smithsonian National Museum of American History in

Washington, D.C.  ECF Doc. 10-1 at 2.  The scope of the work was defined as all things

necessary for the: "SSB Flag Table, Gantry, Roll and Protective Crate Work … ." *Id.*  Tomco

was to be paid $1,290,000 by Turner "out of funds received from [the Smithsonian]." ECF Doc.

10-1 at 3.  Turner reserved the right to, upon written order, require that Tomco perform

additional necessary work, the value of which could be determined by stipulation or a formula

provided in the contract.  ECF Doc. 10-1 at 5.  Payment to Turner by the Smithsonian was a

condition precedent to Turner's final payment obligation to Tomco.  ECF Doc. 10-1 at 3.  The

contract also included an integration clause, specifying that it could not be "changed in any way

except as herein provided, and no term or provision hereof may be waived by Turner except in writing signed by its duly authorized officer or agent." ECF Doc. 10-1 at 10-11.

The 2009 contract stated that, following the 2007 contract, a dispute arose over the amount Tomco was owed on "certain claimed extra work," $64,500 of which was undisputed. ECF Doc. 10-2 at 2.  To settle the dispute, Turner agreed to: (1) pay Tomco $114,500; (2) request from the Smithsonian payment for Tomco's work under "Change Order E-30" and remit to Tomco any amount in excess of $14,500; and (3) prosecute against the Smithsonian Tomco's claims for payment on additional change orders and remit to Tomco (a) any amount in excess of $14,500 not already paid for Change Order E-30, (b) 60% of any payment thereafter until Turner's costs and legal fees were reimbursed, and (c) 100% of all other payment.  ECF Doc. 10-2 at 3-4.  In exchange, Tomco agreed to cooperate with Turner's litigation efforts and to release Turner from liability on any claim arising out of the 2007 contract.  ECF Doc. 10-2 at 5. The release did not apply to the parties' obligations under the 2009 contract.  ECF Doc. 10-2 at 4-5.

The 2014 contract stated that it was intended to resolve any dispute relating to: (1) Tomco's "claims"; (2) labor, material, and equipment provided by Tomco on the 2007 contract; (3) the 2007 contract as between Turner and Tomco; and (4) Turner's contract with the Smithsonian.  ECF Doc. 10-3 at 2-3.  In exchange for $90,000, Tomco agreed to release Turner from liability for any claim arising under the 2007 contract, the Smithsonian construction project, Tomco's "claims," or the 2009 contract.  ECF Doc. 10-3 at 3.  The 2014 contract included an integration clause by which the parties disclaimed reliance on any representation not expressly included in the contract and that the written contract superseded all prior representations.  ECF Doc. 10-3 at 4.  The contract included a choice-of-law provision stating

that it was to be construed and interpreted in accordance with the laws of the District of Columbia.  ECF Doc. 10-3 at 5.

Turner filed in conjunction with its answer a motion for judgment on the pleadings.  ECF Doc. 11.  Generally, Turner argues that Tomco's claims are barred by the release provision in the 2014 contract and, alternatively, that Tomco's complaint has failed to state a claim upon which relief could be granted.[2]  ECF Doc. 11 at 13-26.  On February 18, 2022, Tomco filed an opposition brief, voluntarily withdrawing its Count Three declaratory-judgment claim and responding generally that the release provision in the 2014 contract was not enforceable because it was procured by fraud or duress and that its complaint stated plausible claims for breach of contract, unjust enrichment, and intentional misrepresentation.  ECF Doc. 14.  On March 3, 2022, Turner filed a reply brief, adding to its previous arguments that Ohio's parol evidence rule barred the consideration of Turner's alleged misrepresentation to overcome the release and, alternatively, that under Ohio law Tomco was nevertheless required to return the $90,000 for the release to avoid its enforcement.  ECF Doc. 16.  Neither party briefed the issue of which state's substantive law applies to Tomco's claims or the enforcement of the 2014 release; rather, both parties cite Ohio law exclusively to make their arguments.  *See generally* ECF Doc. 11; ECF Doc. 14; ECF Doc. 16.

On March 18, 2022, the court received two envelopes from Louis and Frank Tombazzi containing affidavits from each of them and a supporting exhibit signed by Louis Tombazzi and Turner's purchasing agent.  *See* Docket Entry dated 3/21/2022.  The court ordered Tomco's counsel to indicate whether Tomco intended to file the documents and to explain their relevance.

---

[2] The parties' arguments for and against judgment on the pleadings are discussed in greater detail, issue-by-issue below.

*Id.* Tomco's counsel later informed the court that he would not file the documents and would move to withdraw.  ECF Doc. 17.

On March 28, 2022, the court granted Tomco's counsel leave to withdraw from representation and ordered Tomco to obtain new counsel by April 27, 2022.  Docket Entry dated 3/28/2022.  To date, no new counsel has entered an appearance.

## III.  Threshold Matters

### A.  Liberal Construction

The court notes that Tomco is currently without representation.  However, the complaint and all the relevant pleadings in this matter were filed by counsel.  The court, therefore, will not afford liberal construction to Tomco's complaint or opposition brief.  *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1994) ("Liberal construction is not necessary [when] the claimant is aided by counsel in preparing his charge."); *see also, e.g.*, *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008) (refusing to give liberal construction to complaint drafted by counsel despite plaintiff's later pro se status); *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (same).

### B.  Exhibits to be Considered

In ruling on a motion for judgment on the pleadings, "the court considers all available pleadings [including] any document attached to, incorporated by, or referred to in the pleadings … ."  *Dudek v. Thomas & Thomas Att'ys & Couns. at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (internal citation omitted).  The court may also consider "documents attached to the motion … that are referred to in the complaint and central to the plaintiff's allegations, even if not incorporated by reference."  *Id.*

### 1.    Contracts Attached to the Answer

Tomco has not disputed the court's authority to consider the contracts attached to Turner's answer in making its ruling on Turner's motion.  *See generally* ECF Doc. 14.  Tomco states, however:

> It should … be noted [that] the exhibit of the 2007 agreement is not signed.  The 2009 agreement shows it was signed by Louis Tombazzi, president.  The 2014 agreement was signed by Frank Tombazzi as co-president.  It is plausible Frank Tombazzi did not have the authority to enter into the 2014 agreement.

ECF Doc. 14 at 7.  To the extent Tomco's observations were meant as an argument for why the court should not consider the contracts, the court finds the matter insufficiently briefed to merit consideration.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at meaningful argument, are deemed [forfeited].").

Moreover, the contracts constitute written instruments attached to pleading.  Fed. R. Civ. P. 7(a)(2) (describing an answer as a pleading); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes); *see also Northern Indus. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 453 (7th Cir. 1998) (describing contracts as examples of written instruments covered by Rule 10(c)).  That the copy of the 2007 contract was unsigned is, for present purposes, irrelevant because neither party has disputed the accuracy of the copy before the court.  *See Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 642 (N.D. Ohio 2012) (finding that the lack of authentication of the contracts attached to the pleadings did not preclude their consideration because the plaintiffs did not "question the substantive validity, accuracy, or completeness of the documents").  Therefore, the court may consider them.  *Dudek*, 702 F. Supp. 2d at 832.

### 2. Tombazzi Affidavits

The court is not permitted to and has not considered the Tombazzi affidavits mailed to the court on March 18, 2022 in deciding Turner's motion for judgment on the pleadings.  The affidavits were submitted by the Tombazzis personally and not through Tomco's attorney of record.  *See United States v. Odom*, No. 18-6151, 2019 U.S. App. LEXIS 20980, at *2 (6th Cir. 2019 July 15, 2019) (unreported) ("We routinely decline to review issues raised in *pro se* filings when the party is represented by counsel").  The affidavits were never served upon opposing counsel.  *See Evans v. Mallory*, No. 08-12725, 2009 U.S. Dist. LEXIS 79069, at *7 (E.D. Mich. Sept. 2, 2009) ("When a decision maker relies on ex parte evidence in reaching his conclusion, a violation of the other party's right to procedural due process occurs.").  And corporations can only appear in federal court through licensed counsel.  *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993); *see also Harris v. Akron Dep't of Pub. Health*, 10 F. App'x 316, 319 (6th Cir. 2001).  Tomco's exhibits are, therefore, a nullity and form no basis of this opinion.  *See, e.g.*, *Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances Co.*, 908 F. Supp. 2d 763, 766 n.2 (W.D. Va. 2012); *Frayler v. New York Stock Exch., Inc.*, 118 F. Supp. 2d 448, 449 n.2 (S.D.N.Y. 2000).  However, the court has attached the exhibits to this opinion in order to make them a part of the record that could be considered upon appeal.

### 3. Voluntary Withdrawal

Tomco states that it voluntarily withdraws its Count Three declaratory judgment claim in light of the removal to federal court.  ECF Doc. 14 at 4.  Turner does not oppose Tomco's voluntary withdrawal without prejudice.  ECF Doc. 16 at 7.  Therefore, the Tomco's Count Three declaratory-judgment claim is DISMISSED WITHOUT PREJUDICE.

### 4.     Choice of Law

Because this case is before the court on diversity jurisdiction, we ordinarily must apply the forum state's (Ohio) choice of law rules to determine which state's substantive law governs Tomco's claims.  *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013). Specifically, we would have to decide among the substantive law of the District of Columbia, New York, and Ohio.  Neither party, however, has briefed the issue and both parties rely on Ohio law exclusively in arguing the enforceability of the release provision of the 2014 contract and the merits of the individual claims.  *See generally* ECF Doc. 11; ECF Doc. 14; ECF Doc. 16.  Thus, the court will apply Ohio law as to all issues in adjudicating Turner's motion to dismiss.  *See My Imagination, LLC v. M.Z. Berger & Co.*, 726 F. App'x 272, 276 (6th Cir. 2018) ("When neither party raises a choice-of-law issue in a diversity case, the law of the forum state … applies."); *see also., e.g.*, *Babcock & Wilcox Power Generation Grp., Inc. v. Cormetech, Inc.*, 81 F. Supp.3d 632, 640 (N.D. Ohio 2015); *Hatcher v. Nationwide Prop. & Cas. Ins. Co.*, 34 F. Supp.3d 704, 708 n1. (E.D. Mich. 2014); *Wilkes v. Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001).

## IV.     Merits

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim upon which relief may be granted.  *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).  To survive, the factual assertions in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In determining sufficiency, we construe the facts alleged in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as

true, and draw all reasonable inferences in the plaintiff's favor.  *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019).  But the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### A.    Release and Fraud

Turner argues that the release provision of the 2014 contract bars Tomco's claims.  ECF Doc. 11 at 7-8, 14-15.  Turner argues that under Ohio's parol evidence rule Tomco cannot rely on the misrepresentations alleged in the complaint to establish that Tomco was fraudulently induced into signing the release because the release contains an unambiguous integration clause, and the alleged misrepresentations are contradicted by the terms of the contract.  ECF Doc. 11 at 22-25.

Tomco responds that the release is unenforceable and that the alleged misrepresentations are admissible because the complaint alleges duress and/or fraud, the latter of which is an issue of fact.  ECF Doc. 14 at 5-6, 8.  Tomco argues that the misrepresentations are "independent and not necessarily inconsistent" with the terms of the release.  ECF Doc. 14 at 6.  With specific regard to the promise to remit funds recovered from the litigation, Tomco argues that if Turner did not recover, then it would not have to pay more than the $90,000, which is not inconsistent with the terms of the contract.  *Id.*

In its reply brief, Turner argues that Tomco has no plausible fraud claim with which to avoid application of the parol evidence rule and overcome enforcement of the release.  ECF Doc. 16 at 4, 7.  Turner argues that the facts, as alleged, fail to meet the particularity requirements of Federal Rule of Civil Procedure 9(b); the misrepresentations contradict the terms of the 2014 contract; Tomco cannot maintain a fraud claim based on misrepresentations of future conduct;

and Tomco would in any event have to return the consideration received for the release to avoid its enforcement. ECF Doc. 16 at 9-13.

Release from liability is an affirmative defense, the effect of which is an absolute bar to any claim encompassed within the terms of the release. Fed. R. Civ. P. 8(c)(1); *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 13 (Ohio 1990). The party against whom the release is asserted can avoid its application by alleging that the release was obtained by fraud and, depending on the nature of the fraud alleged, returning the consideration received for the release. *Id.* "A release obtained by fraud in the factum is *void ab initio*, while a release obtained by fraud in the inducement is voidable on proof of fraud." *Id.* The former requires that the consideration be returned, while the latter does not. *Id.* at 13-14. Which kind of fraud has been alleged is a question of law. *Id.* at 14.

### 1. Applicability and Validity

There is no dispute between the parties that the release applies to Tomco's claims; rather, they dispute its validity and enforceability. The release provision of the 2014 contract provides that:

> Upon Turner's delivery of the Settlement Payment, TOMCO hereby releases, acquits and forever discharges Turner … from any and all rights, claims, suits, demands, damages of whatever nature, actions and causes of action of any kind whatsoever, known or unknown, suspected or unsuspected, resulting from, arising out of, or in any way related to the Subcontract, the Project, TOMCO's claims or the Liquidating Agreement.

ECF Doc. 10-3 at 3. Tomco's current claims for breach of contract and unjust enrichment fall within the release provision's terms because the claims arise out of the 2007 contract and later change orders, which were the subject of the 2009 contract (referred to in the release as the "Liquidation Agreement").

Although not framed as a challenge to the validity of the release, Tomco asserts that it is plausible that Frank Tombazzi did not have the authority to enter into the 2014 contract. ECF Doc. 14 at 7. The court finds Tomco's one-sentence statement insufficiently developed to serve as a basis for contesting the enforceability of the release. *See McPherson*, 125 F.3d at 995-96. Tomco has also not attempted to elaborate on its statement in the complaint that the 2014 contract might not be valid on account of the fact that the Smithsonian was not a signatory. ECF Doc. 1-2 at 8. Because Tomco has not explained why the Smithsonian not being a party to the 2014 contract would render unenforceable the release provision as it relates to the rights of Tomco and Turner on work performed on the 2007 contract, the court finds that Tomco has not established that the 2014 contract is invalid for that reason. *See McPherson*, 125 F.3d at 995-96.

### 2. Parol Evidence

"The parol evidence rule states that absent fraud, mistake, or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini*, 90 Ohio St. 3d 22, 27 (Ohio 2000) (quotation marks omitted). The parol evidence rule operates against evidence of fraud, however, when "the evidence in question is offered to show a promise which contradicts an integrated written agreement. Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible." *Id.* (quotation marks omitted).

The court finds that the parol evidence rule would preclude Tomco from using some but not all of the misrepresentations alleged in the complaint to contest enforcement of the release. The court is not persuaded by Turner's implication that the presence of an integration clause is of relevance to whether the alleged misrepresentations would be admissible. As the very authority

Turner has cited says: "The presence of an integration clause makes the final written agreement no more integrated than does the act of embodying the complete terms into the writing." *Galmish*, 90 Ohio St.3d at 28; *see* ECF Doc. 16 at 9.

Tomco's fraud claim is premised on three misrepresentations: (1) the 2009 misrepresentation that Tomco needed to change its paperwork and assist with litigation if it expected to be paid; (2) the promise of money obtained from the Smithsonian litigation if Tomco signed the release; and (3) the promise of being able to submit quotes worth $10 million annually.  The first and second misrepresentation are effectively embodied into the 2009 contract between Turner and Tomco, under which Turner promised to litigate on Tomco's behalf and remit funds recovered in exchange for a release and Tomco's cooperation with the lawsuit.  ECF Doc. 10-2 at 3-5.  The 2014 contract was explicit that it superseded the 2009 contract and released Turner from liability on all claims arising under the 2009 contract.  ECF Doc. 10-3 at 3. To argue that Turner would still be bound by an obligation in the 2009 contract, when the 2014 contract indicates that it supersedes and releases Turner of those same obligations, is contrary to the direct terms of the 2014 contract.  The parol evidence rule would, therefore, preclude Tomco from arguing that it was fraudulently induced to sign the release by either statement.  *See Busler v. D&H Mfrs.*, No. 94APE08-1137, 1995 Ohio App. LEXIS 2238, at *23-24 (Ohio Ct. App. May 30, 1995) (unreported) ("[T]he law does not allow parties to prove fraud by asserting that the inducement to enter into an agreement was a promise within the scope of the integrated agreement but which was not ultimately included."); *see also Chase Home Fin., LLC v. Literski*, 2014-Ohio-615, ¶19 (Ohio Ct. App. 2014) ("[A] party cannot claim they were misled into signing a document when the aggrieved party could have discovered the truth by simply reading the document." (citing *Ed Schory & Sons v. Francis*, 75 Ohio St. 3d 433, 441 (Ohio 1996)).

14

The third misrepresentation, however, would not be barred from consideration.  The terms of the 2014 contract addressed the parties' past conduct: the duties owed to one another under the 2007 and 2009 contracts.  The 2014 contract contains no terms concerning the parties' future business interactions.  Even though a promise for additional work could be seen as additional consideration for the release that should have been included in the agreement, it is just as consistent with an independent promise.  Thus, it is not barred by the parol evidence rule.  *See Galmish*, 90 Ohio St.3d at 30.

### 3.  Fraud

Under Ohio law, a claim for intentional misrepresentation is just another name for fraud; both share the same elements.  *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 690 (S.D. Ohio 2018).  The plaintiff must allege: "(a) a representation … (b) which is material to the transaction, (c) made falsely, with knowledge of its falsity … (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation … and (f) a resulting injury proximately caused by the reliance."  *Russ v. TRW, Inc.*, 59 Ohio St. 3d 42, 49 (Ohio 1991).

To make a sufficient claim for fraud, the complaint must allege "with particularity the circumstances constituting fraud … ."  Fed. R. Civ. P. 9(b); *see also* Ohio Civ. R. 9(B).  To comply with Rule 9(b), the plaintiff must, "*at a minimum* … allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendant[]; and the injury resulting from the fraud."  *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 384 (6th Cir. 2015) (emphasis added; quotation marks omitted); *see also Carter-Jones Lumber Co. v. Denune*, 725 N.E.2d 330, 332 (Ohio Ct. App. 1999).  The plaintiff must also: "(1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the

statement fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253 (6th Cir. 2012).  However, Rule 9 must be read in harmony with Rule 8; the question is whether enough has been alleged to put the defendant on notice of the nature of the claim.  *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988).

Even though Turner's alleged misrepresentations might be admissible, Tomco has not pleaded its fraud claim with sufficient detail to meet the requirements of Rule 9(b).  Tomco's fraud claim is premised on three misrepresentations, the first of which is Kwik's and Wright's 2009 statements that Turner needed Tomco to change its paperwork and cooperate with its litigation efforts if it wanted to be paid.  The first misrepresentation is deficient because Tomco has not identified specifically when Kwik's and Wright's statements were made or to whom; what "paperwork" they wanted Tomco to change; or how specifically they wanted the "paperwork" changed.  Tomco has merely identified the existence of the misrepresentation, without any detail of what the scheme entailed.

The second and third misrepresentations are the statements by unnamed person(s) at an unspecified time before the 2014 contract was signed promising Tomco that: (1) Turner would pay Tomco out of the recovery from the Smithsonian; and (2) Tomco could submit quotes for additional work under the 2014 contract valued at $10 million annually.  The second and third misrepresentations share the same defects.  Tomco has neither alleged when the statements were made (other than anytime in the 5 years between 2009 and 2014) nor identified who made the statements and to whom the statements were made.

These pleading defects doom Tomco's fraud claim.  *See DBI Invs., LLC*, 617 F. App'x at 384-85.  And without a cognizable claim of fraud, Tomco cannot avoid enforcement of the

release.  *See Zigdon v. LVNV Funding, LLC*, No. 1:09CV0050, 2010 U.S. Dist. LEXIS 53813, at *43 (N.D. Ohio Apr. 23, 2010).

### 4.  Duress and the Tender-Back Rule

Tomco argues that it can also avoid enforcement of the release on a theory of duress because it was in a precarious financial position at the time it signed the 2014 contract.  ECF Doc. 14 at 5-6.  There are two hurdles that argument has not overcome, the first of which is that Tomco has not alleged a claim of duress in its complaint.  All Tomco has alleged is that it was a small company negotiating with a big company.  That alone is not enough.  *Blodgett v. Blodgett*, 49 Ohio St. 3d 243, 246 (Ohio 1990) ("[M]erely taking advantage of another's financial difficulty is not duress." (quotation marks omitted)).

More importantly, challenging a release on the basis of duress would only render the release voidable, triggering Ohio's tender-back rule.  *Haller*, 50 Ohio St. 3d at 15; *see also Maust v. Bank One Columbus, N.A.*, 614 N.E.2d 765, 769 (Ohio Ct. App. 1992).  Under that rule, the releasor cannot maintain a cause of action against the releasee until *after* he has tendered back the money paid to him as consideration for singing the release.  *See Picklesimer v. Baltimore & O.R. Co.*, 151 Ohio St. 1, 5-6 (Ohio 1949).  Tomco has not alleged that it returned the $90,000 it received for the release, so it cannot avoid enforcement of the release on a theory of duress.

Tomco would also be required to tender back the $90,000 to Turner under its theory of fraud.  For Tomco to avoid having to return the consideration under a theory of fraud, it would have to allege a claim of fraud in the factum.  *Haller*, 50 Ohio St. 3d at 14.  Fraud in the factum occurs when "an intentional act or misrepresentation of one party precludes a meeting of the minds concerning the nature and character of the purported agreement."  *Id.*  This is what

17

Tomco's complaint alleges, but the allegations upon which that contention are based have not stated a claim of fraud in the factum.  ECF Doc. 1-2 at 8.  Fraud in the factum is concerned with the signatory's knowledge of what he was signing, such as: (i) when a page of the contract was substituted at the time of signing; (ii) when the contract was misread to an illiterate signatory; or (iii) when the signatory was under anesthesia.  *See Perry v. M. O'Neil & Co.*, 78 Ohio St. 200, 210, 220 (Ohio 1908); *Kight v. Miller*, 2017-Ohio-5714, ¶37 (Ohio Ct. App. 2017).  Tomco has not disputed its knowledge of the release or the scope of its application; rather, it has alleged that it signed the release based on promises of additional money and work quotes that Turner never intended to provide.  That Tomco was induced to sign based on a false promise is fraud in the inducement, not fraud in the factum.  Thus, even assuming a cognizable claim of fraud, Tomco would have had to return the $90,000 it received from Turner before it could proceed with this action.  *See Berry v. Javitch, Block & Rathbone, L.L.P.*, 127 Ohio St. 3d 480, 484 (Ohio 2010); *see also Weissman v. Blaushild*, 2008-Ohio-219, ¶37 (Ohio Ct. App. 2008).

In summary, the release applies to Tomco's claims against Turner arising out of the 2007 contract.  Because Tomco has not pleaded cognizable claims for fraud or duress, Tomco cannot avoid enforcement of the release.  And even had Tomco adequately pleaded a claim for duress or fraud, it would have been required under the facts alleged to return the $90,000 it received under the 2014 contract, which it has not done.  Judgment on the pleadings would be warranted on that basis alone.  Moreover, as discussed below, even without the release, Tomco's complaint has failed to allege plausible claims for breach of contract or unjust enrichment.

### B.    Breach of Contract

Turner argues that even if the release provision in the 2014 contract were not enforceable, Tomco failed to allege a plausible breach-of-contract claim because Tomco has not alleged in

18

what way Turner breached its obligations under the 2007 contract.  ECF Doc. 11 at 16.

Alternatively, Turner argues that a claim for breach of the 2007 contract would be barred by

Ohio's statute of limitations.  Id.

Tomco responds that its Count One claim for breach of contract is not based on the 2014

contract.  ECF Doc. 14 at 5.  Without specifying what contract Turner is alleged to have

breached, Tomco asserts that: Turner modified the 2007 contract by representing that it would

pay Tomco $90,000 if it signed the release and remit funds recovered from future litigation

against the Smithsonian; Tomco performed "under the contract;" and that Turner failed to

perform "by not paying it the money promised in 2014 and earlier."  Id.  Tomco argues that any

breach, therefore, occurred in 2017, when Turner recovered from the Smithsonian, making its

breach-of-contract claim timely.  Id.

In its reply brief, Turner argues that Tomco's complaint never alleged that the breach

alleged in Count One was a breach of an oral modification to the 2007 agreement.  ECF Doc. 16

at 5.  Turner argues that the 2007 contract does not allow for oral modifications, such that Tomco

could not sue on a purported oral modification.  Id.  Turner further argues any oral modification

would fail for noncompliance with the Statute of Frauds.  Id.

### 1.  Statute of Limitations

Under Ohio law, the period of time provided for parties to bring a claim of breach of a

written contract varies depending on when the claim accrued: (1) a 15-year period applies to

claims that accrued before September 28, 2012; (2) an 8-year period applies to claims that

accrued between September 28, 2012 and June 15, 2021; and (3) a six-year period applies to

claims that accrued on or after June 16, 2012.  2021 Ohio SB 13 §§ 1, 4.; 2011 Ohio SB 224

§§ 1, 4.  When the limitations period for a claim which accrued during an earlier limitations

period runs past the accrual date of a later limitations period, the limitations period which would expire first governs.  2021 Ohio SB 13 § 4.; 2011 Ohio SB 224 § 4.  The statute of limitations for a breach of contract claim arising from an oral contract is six years for claims that accrued on or before June 16, 2021.  2021 Ohio SB 13 § 1, 3

Regardless of the nature of Tomco's breach of contract claim, it would not be barred by the statute of limitations.  Turner's argument conflates the statute of limitations with the merits. *See Peabody Coal Co. v. Dir.*, 718 F.3d 590, 594 (6th Cir. 2013) ("Statutes of limitation are intended to stave off stale claims, not weak claims.").  Whether under the strict terms of the 2007 contract or the alleged oral modification, the breach alleged is the same: payment of money owed for Tomco's change orders.  Under the 2007 contract, Turner being paid by the Smithsonian was a condition precedent to Turner being required to pay Tomco.  The same is true under the alleged oral modification.  The relevant question under both scenarios was when the Smithsonian paid Turner.  *See G.G. Mack & Assocs. v. Peng*, 762 F. App'x 303, 308 (6th Cir. 2019) (stating that under Ohio law a breach generally accrues when the breach occurred or actual damages were suffered).  The only date on which that was alleged to have happened is 2017.  Therefore, the claim is timely.  *See* Ohio Rev. Code § 2305.06 (2020); Ohio Rev. Code § 2305.07 (2020).

## 2.  Plausibility

Under Ohio law, a claim for breach of contract consists of four elements: (1) a contract between the parties; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages.  *See Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 463 (Ohio 2018).  "[I]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached."

*Northhampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (quotation marks omitted).

Although timely, Tomco has not adequately pleaded a claim for breach of contract in the way Tomco appears to argue.  Count One, as pleaded, is a recitation of the elements of a breach of contract claim, specifying only that Turner breached the "contract" by failing to pay Tomco. ECF Doc. 1-2 at 8.  It is not clear from which contract the duty to pay arose: the 2007 contract or the alleged verbal promise made to induce the 2014 release.  If the breach is based on the oral statement made to induce Tomco's assent to the 2014 contract, as discussed above, it would be barred by the parol evidence rule.

If, as Tomco argues, the breach is based on the oral modification to the 2007 contract, it would not be barred under the statute of frauds because performance would be contingent upon a future event which would not necessarily occur within a year.  *See Sherman v. Haines*, 73 Ohio St. 3d 125, 127 (Ohio 1995).  It also would not be barred by the provision of the 2007 contract restricting forms of modification.  Taking the facts Tomco has alleged as true, the parties' conduct would constitute a course of conduct in conformance with the oral modification, which could bind Turner.  *See RotoSolutions, Inc. v. Crane Plastics Siding, LLC*, 2013-Ohio-4343, at ¶19 (Ohio Ct. App. 2013); *see also Third Fed. S&L Ass'n of Cleveland v. Formanik*, 2014-Ohio-3234, ¶13 (Ohio Ct. App. 2014) ("[E]ven contracts that are required by the statute of frauds to be in writing can be modified orally when the parties … act upon the terms of the oral agreement." (quotation marks omitted)).  Specifically, Turner could be bound by its conduct in: (1) telling Tomco that it intended to litigate against the Smithsonian; (2) telling Tomco that Tomco would not get paid for the additional work on the 2007 contract unless the litigation was successful; and (3) requiring Tomco to change its "paperwork" to facilitate the litigation.

21

That being said, the oral promise would nevertheless have to be supported by additional consideration for it to be binding upon Turner. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 909 (6th Cir. 2006). And the consideration had to be something Tomco wasn't already entitled to or that Turner wasn't already obligated to provide. *Brads v. First Baptist Church*, 624 N.E.2d 737, 743 (Ohio Ct. App. 1993). The court fails to see how Turner orally obliging itself to pay Tomco from funds received from the Smithsonian for the work Tomco performed on the 2007 contract is materially different from its obligation under the 2007 agreement to pay Tomco for the work performed after being paid by the Smithsonian.

If, however, Tomco's claim for breach of contract is based on Turner's failure to pay what was owed on the 2007 contact, a duty that would not have been triggered until Turner itself was paid, then Tomco would have alleged a plausible breach of contract claim – provided the release did not bar the claim. Ultimately, the lack of clarity dooms Tomco's Count One claim. *See Northhampton Rest. Grp., Inc.*, 492 F. App'x at 522.

### C.      Unjust Enrichment

Turner argues that Tomco cannot maintain an unjust enrichment claim for the work it performed on the 2007 agreement because the same subject matter is covered by the 2007 contract or the 2009 contract. ECF Doc. 11 at 17; ECF Doc. 16 at 6-7.

Tomco responds that an unjust enrichment claim can be maintained when there is evidence of fraud or bad faith. ECF Doc. 14 at 7. Tomco argues that fraud has been alleged and that bad faith has been alleged "at least implicitly." *Id.*

The court concurs with Turner. "Ohio does not recognize unjust enrichment as an alternative theory of recovery when an express contract covers the same subject." *Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 521 (S.D. Ohio 1995). Neither party disputes that the 2007

contract, at least, covers Tomco's claim for unjust enrichment.  Tomco could maintain an unjust enrichment claim if it alleged fraud or bad faith.  *Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp.2d 763, 772 (N.D. Ohio 2004).  But, as discussed above, Tomco has failed to plead a plausible claim for fraud.  *See Jones v. Petland, Inc.*, No. 2:08-cv-1128, 2010 U.S. Dist. LEXIS 12520, at *10-11 (holding that failing to meet the particularity pleading requirements for a fraud claim, by extension, doomed plaintiff's unjust-enrichment claim).  Tomco's argument that it nevertheless alleged bad faith is not well taken, given that the complaint does not allege a claim of bad faith and Tomco has not argued how the facts alleged would establish a plausible claim of bad faith.

## V.     Leave to Amend

Tomco requests that it be given leave to amend to remedy any deficiencies in the manner the claims were pleaded.  ECF Doc. 14 at 7.  Turner does not oppose this request.  *See generally* ECF Doc. 11; ECF Doc. 16.

The court grants Tomco's request for leave to amend.  *See* Fed. R. Civ. P. 15(a)(2).  The main barrier to Tomco's claims, as discussed above, is the release provision of the 2014 contract, which he cannot overcome absent a showing fraud.  Leave to amend is appropriate for Tomco to plead a claim for fraud in compliance with the requirements of Rule 9(b).  *See Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993).  Further, a well pleaded, plausible claim of fraud would sustain a claim of unjust enrichment.  Leave to amend is also appropriate for Tomco to more clearly articulate the nature of the breach-of-contract claim.  Tomco is cautioned, however, that because of the nature of the fraud alleged, it must return the $90,000 it received in consideration in order to proceed with this lawsuit.  *See Talmer Bank & Trust v. Malek*, 651 F. App'x 438, 444 (6th Cir. 2016).

## VI.    Conclusion

Turner's motion for judgement on the pleadings (ECF Doc. 11) is GRANTED and Tomco's complaint is DISMISSED WITHOUT PREJUDICE.

Tomco's request for leave to amend is GRANTED with respect to its Count One claim for breach of contract, its Count Two claim for unjust enrichment, and its Count Four claim for intentional misrepresentation.

The court notes that Tomco is currently without counsel, in violation of the court's March 28, 2022 order and for which a show cause order has already issued.  ECF Doc. 24.  If Tomco intends to file an amended complaint, the law only permits it to do so through a licensed attorney.  Thus, the court EXTENDS the time by which Tomco must show cause.  Specifically, Tomco shall have 30 days from the date of this order, until August 8, 2022, by which it must either: (1) obtain new counsel, cause that attorney to enter an appearance, and file an amended complaint; or (2) show cause why this case should not be dismissed for failure to prosecute. **<u>Failure to comply with the foregoing requirements will result in the dismissal of this action with prejudice</u>**.

The July 13, 2022 deadline in the previous show cause order (ECF Doc. 24) is VACATED.

**IT IS SO ORDERED.**

Dated: July 8, 2022

Thomas M. Parker
United States Magistrate Judge

24